UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| LLOYD W. ADDIE, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:05-cv-776 |
| ) | |
| v. ) | Honorable Wendell A. Miles |
| ) | |
| BRUCE CURTIS et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.        Factual allegations

Plaintiff is incarcerated in the Grand Rapids Correctional Center where he is under the custody of the Michigan Department of Corrections (MDOC). Plaintiff's complaint does not concern the conditions of his confinement; rather, his action concerns the calculation of his maximum sentence and the revocation of his parole by the Michigan Parole Board. In his *pro se* complaint, he sues Bruce Curtis, Warden of the Jackson Correctional Facility (JMF); Lawrence Baron, Manager of the Parole Supervision Unit; David Brazee, Assistant Resident Unit Supervisor at JCS; Elaine Wingart, Records Supervisor at JMF; Judy Cotton, Grievance Coordinator at JCS; Marianne Samper, Parole Board Member; Patricia Caruso, Director of the MDOC; James Quinlan, Parole Board Member; Gary Kassenow, Parole Board Member; Daryl Reinch, Parole Agent; Kathy Spanburg, Central Office Records Custodian; Joan Yukins, Deputy Director of Field Operations; John Doe, Field Agent; and Jane Doe, Parole Board Agent.

On October 30, 2001, Plaintiff pleaded guilty to larceny by conversion and was sentenced to imprisonment of one to five years. Plaintiff was released on April 20, 2002, for a two-year term of parole. A Parole Violation Report was prepared on December 11, 2002, stating that Plaintiff failed to report. Plaintiff remained on absconder status until October 23, 2003, when he was arrested on the parole violation charge. He was held in the Kent County Jail pending a preliminary parole revocation hearing. During a meeting on November 10, 2003, with parole board agent John Doe, Plaintiff agreed to participate in the Technical Rule Violation (TRV) Program. The TRV program offers alternative placement for a prisoners who has committed a technical violation of his parole. *See* MICH. DEP'T. OF CORR., Policy Directive 06.03.104. Upon successful completion of the

intensive ninety-day program, all suspended parole violation charges must be dismissed and the prisoner returned to active parole in the community. *Id.* at 06.03.104(W). While Plaintiff believed that he was innocent of the parole violation charge, he agreed to waive his parole revocation proceedings and participate in the TRV Program. According to Plaintiff, Defendant John Doe assured him that if he successfully completed the program, Plaintiff would receive an uninterrupted continuation of his two-year parole term.

Plaintiff successfully completed the TRV Program on February 3, 2004, and was released on parole. Plaintiff expected for his parole to expire on April 20, 2004, two years after his original parole release date. However, in May 2004, Defendant Parole Agent Daryl Reinch informed Plaintiff that his parole was extended for the time that he was on absconder status and the time that he was in the TRV Program. Reinch further stated that had Petitioner's parole terminated on April 20, 2004, Petitioner would have been in violation for not paying his restitution in full before his discharge date. Reinch allegedly offered to discharge Plaintiff upon full payment of his restitution. In July 2004, Plaintiff paid the remaining balance owed on his restitution. Reinch told Plaintiff that he should expect to receive discharge papers very soon. While he waited for notice of the discharge, Plaintiff continued to report to Reinch on a monthly basis. On October 11, 2004, Plaintiff learned of several new parole violation charges brought against him, including alcohol use, being self-employed and stealing a tool. Plaintiff pleaded guilty to three of the charges on November 30, 2004.

In March 2005, Defendant ARUS Brazee told Plaintiff that his release date was March 30, 2006. When Plaintiff told Brazee that the date was incorrect, Brazee directed Plaintiff to the records department. After numerous requests, Plaintiff received an MDOC "Time Review and

Disposition" form on June 15, 2005, stating that 323 days of "dead time" had been added to his sentence for the period that he had been on absconder status. Plaintiff disputed the addition of the time he was on absconder status because the parole violation charge had been dismissed after he completed the TRV program. Plaintiff filed a grievance disputing the addition of 323 days to his sentence and sent correspondence to various Defendants. Plaintiff's maximum release date is currently listed as April 6, 2006.

Plaintiff claims that because he successfully completed the TRV program the alleged parole violation for absconding was dismissed and should not be recorded as a parole violation on his institutional file. He further asserts that Defendants violated his due process rights by extending his fixed term of parole without notice or a hearing. In addition, Plaintiff contends that his due process rights were violated when his parole was revoked and he was returned to prison after his fixed term of parole had been completed. Plaintiff also claims that Defendants' conduct constituted cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff seeks "declaratory judgments affirming all arguments," an injunction ordering the MDOC to expunge his 2002 parole violation charge from his institutional record, as well as compensatory and punitive damages.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

Petitioner's claims concerning the calculation of his sentence and the revocation of his parole implicate the fact or duration of his confinement. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997) (declaratory relief); *Clarke v. Stadler*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive).

The principles espoused in *Heck* have been applied to § 1983 actions like petitioner's, challenging the calculation of a prison sentence. *See, e.g., See McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 160-61 (5th Cir. 1995); *Fewless v. County of Ottawa*, No. 1:05-cv-649, 2005 WL 3132330 (W.D. Mich. Nov. 22, 2005); *Heck* also has been applied to civil rights actions challenging state parole revocation proceedings in the absence of a previous decision by a state or federal tribunal declaring the parole revocation invalid. *See, e.g., Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) (per curiam); *Lovett v. Kinkela*, No. 98-3894, 1999 WL

644323, at *1 (6th Cir. Aug. 16, 1999); *Corsetti v. McGinnis*, No. 95-2061, 1996 WL 543684, at *1 (6th Cir. Sept. 24, 1996). Plaintiff has not demonstrated the invalidity of his sentence or parole revocation by either a state or federal habeas corpus decision.[1] Therefore, Plaintiff fails to present a cognizable federal claim.

Plaintiff contends that under *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005), he may bring the instant action under § 1983. In *Wilkinson*, the plaintiffs claimed that the retroactive application of parole guidelines violated the Ex Post Facto and Due Process Clauses. The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines. *Wilkinson*, 125 S.Ct. at 1244. The Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). However, §1983 remains available to state prisoners for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. *Id.* at 1247-48. In *Wilkinson*, the plaintiffs' success in their action would result only in a new parole hearing, the outcome of which was unknown. As a result, the Supreme Court concluded that the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, and, thus, they could present these claims in the context of a § 1983 action. *Id.* at 1248.

Despite Plaintiff's assertions to the contrary, his § 1983 action is not proper under the Supreme Court's holding in *Wilkinson*. Plaintiff seeks a declaration from the Court that his present

---

[1]A prisoner must exhaust his available state remedies before bringing a habeas corpus action. *See* 28 U.S.C. § 2254(b)(1).

incarceration is unconstitutional. He claims that his sentence should have been fully discharged at the time he committed to offenses resulting in the revocation of parole. He also claims that his sentence was unconstitutionally extended by 323 days. His success on these claims clearly would result in an immediate or speedier release from prison. As a consequence, under *Wilkinson*, Plaintiff's success in the action would necessarily demonstrate the invalidity of his continued confinement. Accordingly, Plaintiff may not maintain an action under § 1983.

Petitioner also argues that *Heck* should not apply to bar his claim because he will have served his maximum sentence on April 6, 2006, and thus, he will not be "in custody" long enough to pursue a habeas corpus action with regard to his claims. Under the law in this circuit, the application of *Heck* does not depend upon whether Plaintiff is "in custody". The view that custody is a necessary prerequisite to the application of *Heck* was suggested by Justice Souter in his concurring opinion in *Spencer v. Kemna*, 523 U.S. 1 (1998). Justice Souter found that the favorable termination requirement did not apply where it was impossible as a matter of law for a prisoner to satisfy the requirement because he had been released from custody. *Id.* at 18-21 (Souter, J., concurring). Four justices adhered to this view. *Id.* at 18-21 (O'Connor, Ginsburg, Breyer, JJ., concurring), and at 25 n.8 (Stevens, J., dissenting). The Sixth Circuit, while recognizing that other circuits had followed the "*Spencer* concurrence/dissent/dictum," expressly declined to follow that position until it is expounded by the Supreme Court in a majority opinion. *Huey v. Stine*, 230 F.3d 226, 229-30 (6th Cir. 2000), overruled on other grounds by *Muhammad v. Close*, 540 U.S. 749, 751 (2004). Instead, the Sixth Circuit followed the eight-justice majority opinion in *Spencer*, authored by Justice Scalia. In response to the petitioner's contention that the favorable termination requirement was not required because he was no longer incarcerated and could not possibly show favorable termination, the majority stated that the contention was "a great non sequitur, unless one

believes that a § 1983 action for damages must always and everywhere be available." *Huey*, 230 F.3d at 229 (citing *Spencer*, 523 U.S. at 17); *see Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995) ("*Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated"); *see also Muhammad*, 540 U.S. at 752 n.2 (expressly declining to decide whether unavailability of habeas relief for reasons other than absence of lost good-time will dispense with the requirements of *Heck*). Thus, in this circuit, *Heck* may apply even though it has become a legal impossibility for a plaintiff to meet the favorable termination requirement because he is no longer "in custody."

A court's dismissal of a claim on the basis that it is barred by *Heck* is properly considered a dismissal under 28 U.S.C. § 1915(g) because it fails to state a claim on which relief can be granted. *See Morris v. Cason*, No. 02-2460, 2004 WL 1326066 (6th Cir. June 10, 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, No. 03-1411, 2003 WL 22976618 (6th Cir. Dec. 8, 2003) (same); *Harris v. Truesdell*, No. 03-1440, 2003 WL 22435646 (6th Cir. Oct. 23, 2003) (*Heck*-barred claim fails to state a claim and is frivolous).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>April 18, 2006</u>                                         /s/ Wendell A. Miles
                                                                           Wendell A. Miles
                                                                           Senior U.S. District Judge